JOHN HENRY CHAPMAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10121. Promulgated October 9, 1947.

*John F. Dailey, Jr., Esq.*, for the petitioner.
*Thomas R. Charshee, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies in income tax as follows:

| | |
|---|---:|
| 1942 | $163.17 |
| 1943 | 300.02 |
| 1944 | 1,822.37 |

The petitioner contends that his income is not included in gross income under section 22 (a) of the Internal Revenue Code and, in the alternative, that it is expressly excluded under sections 22 (b) (8) and 116 (h). He also claims a deduction for traveling expenses. The facts have been stipulated.

The petitioner was a citizen of New Zealand at all times material hereto. He filed nonresident alien returns for 1942 and 1943 with the collector of internal revenue for the first district of New Jersey, and he filed an incomplete return for 1944 with the collector of internal revenue for the district of Maryland.

The petitioner was one of the officials of the First Category of the Secretariat of the League of Nations. The League was an association of 45 foreign governments during the taxable years. The United States never became a member of the League. The seat of the League was established at Geneva, Switzerland, and the permanent Secretariat was established there.

The petitioner, with about 19 other officials of the League, pursuant to instructions from the Secretary-General of the League and through the courtesy of the Department of State, entered this country temporarily in 1940 in order, as officials of the Secretariat of the League, to continue their official work and engage in the business of the League, the pursuit of which at the seat of the League had become hampered and endangered by the dislocation produced by war conditions.

The nature of the petitioner's services was accounting work and the compilation of international trade statistics for use in various League publications. He conducted his official duties from 1940 to July 1946 at Princeton, New Jersey. The petitioner and his family lived at Princeton during that time in a rented apartment which he furnished. He had given up his living quarters in Geneva when he left there.

The expenses of the League were borne in determined proportions by its members. The salary and expenses of the petitioner for the taxable years were paid from a bank account of the League in this country. His salary was about $3,600 per year. The exact amounts are stipulated. The petitioner received in 1944 an allowance for board and lodging of $2,027.64 in addition to his salary. It applied in part to 1943. His living expenses amounted to $2,000 annually.

The Secretary of State of the United States was requested by the petitioner to issue a certificate to the Secretary of the Treasury to the effect that during the tax years in question each member government of the League of Nations, or the League as an association of nations, satisfied the requirements of section 116 (h) of the Internal Revenue Code, namely, that each such government granted an equivalent exemption to employees of the Government of the United States performing services in such foreign countries, and the character of the services performed by employees of the Government of the United States in foreign countries, but he declined to issue such certificate for the stated reason that the Secretary was of the opinion that "The Department had no authority, under the statutory provision in question (116 (h)) to issue certificates to employees of the League of Nations, as such, since the League was not a 'foreign government', had no territorial sovereignty, and was in no position to reciprocate." The Secretary of State declined for the same reason to issue a series of certificates covering each country making up the membership of the League.

The Commissioner explained in connection with the determination of the deficiency for 1944 that, "As the League of Nations is an association of several foreign governments, it does not qualify as a foreign country and its employees are not employees of a foreign government entitled to the benefits of Section 116 (h) of the Internal Revenue Code." He included salary and board and lodging allowance in gross income.

The respondent quotes and relies in part upon sections 211 (b) and 212 (a). They apply exclusively to nonresident alien individuals. The petitioner was an alien. Section 29.211–2 of Regulations 111, relating to section 211 of the code, provides in part as follows:

An alien actually present in the United States who is not a mere transient or sojourner is a resident of the United States for purposes of the income tax. Whether he is a transient is determined by his intentions with regard to the length and nature of his stay. A mere floating intention, indefinite as to time, to return to another country is not sufficient to constitute him a transient. If he lives in the United States and has no definite intention as to his stay, he is a resident. One who comes to the United States for a definite purpose which in its nature may be promptly accomplished is a transient; but if his purpose is of such a nature that an extended stay may be necessary for its accomplishment, and to that end the alien makes his home temporarily in the United States, he becomes a resident, though it may be his intention at all times to return to his domicile abroad when the purpose for which he came has been consummated or abandoned. An alien whose stay in the United States is limited to a definite period by the immigration laws is not a resident of the United States within the meaning of this section, in the absence of exceptional circumstances.

A similar provision has survived repeated reenactments of the law. It has been discussed and approved by this Court. *Arthur J. H. Johnson*, 7 T. C. 1040; *Michael Downs*, 7 T. C. 1053; *J. Gerber Hoofnel*,

7 T. C. 1136; *Ralph Love*, 8 T. C. 400. It does not appear that the petitioner's stay was limited to a definite period by the immigration laws. He lived in the United States continuously from 1940 through 1944 and thereafter. He and his family occupied a rented apartment in Princeton during that period. He had purchased the furnishings. They had no other residence. He had no definite intention as to his stay, i. e., he did not know how many years he might remain here. An extended stay was necessary to accomplish the purpose for which he came, and to that end he made his home temporarily in the United States. He thus became a resident within the definition of the regulation, even though he may have intended to return to his domicile abroad when the purpose for which he came had been accomplished or abandoned. He conducted his business here during the taxable years. The respondent has not advanced any reason why such a person should be regarded as a nonresident [1] within the meaning of that term as used in sections 211 and 212 and, consequently, his argument based upon those sections merits no further consideration.

The petitioner concedes that Congress had the power to tax his compensation. His first contention is that the definition of gross income contained in section 22 (a) does not clearly include the amounts received by him from the League. He makes a rather extended argument on this point, which must be read to be fully appreciated. The Treasury, he says, did not regard the compensation of nondiplomatic [2] officers and employees of foreign governments in this country as taxable income until 1934, at which time section 116 (h) was enacted to make certain that such compensation would continue to be "excluded"; a specific or clear statement of intent to tax such compensation, and particularly to tax the compensation of nondiplomatic officials representing foreign governments, would be necessary to effect a change in the practice established pursuant to principles of international comity; and section 22 (a) was not changed to include such a provision, although other specific provisions were inserted in that section. He then likens himself to an official of a foreign government and concludes that his compensation is not subject to tax under section 22 (a).[3] The section is extremely broad in its scope and has

---

[1] The petitioner incorrectly states in his brief (p. 67) that it was stipulated that he was a nonresident. He so alleged and the allegation was admitted, but the stipulated facts show that he was a resident.

[2] Diplomatic representatives are regarded as exempt under international law.

[3] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITION.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts

been held to indicate an intention to exercise the taxing power to the fullest extent. *Irwin* v. *Gavit*, 268 U. S. 161; *Bland* v. *Commissioner*, 102 Fed. (2d) 157; certiorari denied, 308 U. S. 563. Furthermore, the petitioner was not in the United States for the purpose of representing any foreign government or governments in dealings or relations with our Government and can not establish an adequate parallel between himself and diplomatic or nondiplomatic representatives of foreign sovereigns accredited or assigned to the United States.

The petitioner's alternative contention is that section 116 (h) applies to his compensation. The conclusion that Congress intended to tax him is further supported by a consideration of that section, which provides that the compensation of certain nondiplomatic representatives of foreign governments shall not be subject to tax. The inference is inescapable that compensation of those not qualifying under section 116 (h) is to be taxed. The provision is as follows:

SEC. 116. EXCLUSIONS FROM GROSS INCOME.

In addition to the items specified in section 22 (b), the following items shall not be included in gross income and shall be exempt from taxation under this chapter:

\*    \*    \*    \*    \*    \*    \*

(h) COMPENSATION OF EMPLOYEES OF FOREIGN GOVERNMENTS OR OF THE COMMONWEALTH OF THE PHILIPPINES.

(1) RULE FOR EXCLUSION.—Wages, fees, or salary of an employee of a foreign government or of the Commonwealth of the Philippines (including a consular or other officer, or a nondiplomatic representative) received as compensation for official services to such government or such Commonwealth—

(A) If such employee is not a citizen of the United States, or is a citizen of the Commonwealth of the Philippines (whether or not a citizen of the United States; and

(B) If the services are of a character similar to those performed by employees of the Government of the United States in foreign countries or in the Commonwealth of the Philippines, as the case may be; and

(C) If the foreign government, or the Commonwealth of the Philippines, whose employee is claiming exemption grants an equivalent exemption to employees of the Government of the United States performing similar services in such foreign country or such Commonwealth, as the case may be.

(2) CERTIFICATE BY SECRETARY OF STATE.—The Secretary of State shall certify to the Secretary of the Treasury the names of the foreign countries which grant an equivalent exemption to the employees of the Government of the United States performing services in such foreign countries, and the character of the services performed by employees of the Government of the United States in foreign countries. If the Commonwealth of the Philippines grants an equivalent exemption to the employees of the United States performing services in such Commonwealth the Secretary of State shall certify such fact to the Secretary of the Treasury

of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income.

and the character of the services performed by employees of the Government of the United States in such Commonwealth.

Its purpose was to allow an exemption upon the basis of reciprocity. See Senate Report No. 632, 74th Cong., 1st sess.; House Report No. 1759, 74th Cong., 1st sess. The petitioner has not shown that employees of the Government of the United States performed services in foreign countries similar to those performed by the petitioner in this country or that any basis for reciprocal exemption from tax exists. Compare the reasons given for the refusal by the Secretary of State to issue a certificate to the Secretary of the Treasury. Section 116 (h) was not designed or intended to cover a case like the present one. Further confirmation of this conclusion is found in the amendment to section 116 (h) made by Public Law No. 291, 79th Cong., 1st sess., sec. 4 (b) (1), approved December 29, 1945. That amendment, made applicable to taxable years beginning after December 31, 1943, extended the exclusion to include compensation of an employee of "an international organization." An international organization was defined in Title I, section 1, of that law as "a public international organization in which the United States participates * * * and which shall have been designated by the President through appropriate Executive order as being entitled to enjoy the privileges, exemptions, and immunities" enumerated in the law. The President, by Executive order dated February 19, 1946, when the League of Nations was still in existence, designated certain organizations, but not the League of Nations.

The petitioner seems to suggest that it would be inconsistent or a breach of good faith to tax him after he and his fellows were given the courtesy of a kind of sanctuary during the war. However, our Government did not induce them to come with a promise that the normal operation of any of our laws would be suspended or changed. The wisdom and policy of taxing such persons is a matter for the consideration of Congress, not the courts, which, in a case like this, merely interpret the laws enacted.

The remaining issue for decision is whether "living" expenses in the stipulated amount of $2,000 annually are deductible under section 23 (a) as traveling expenses, including meals and lodging while away from home in the pursuit of a business. These "living" expenses are the kind which are not deductible. Sec. 24 (a) (1). The petitioner contends, nevertheless, that his home and place of business were at Geneva, and when he left there to come to Princeton he was traveling in pursuit of his business. His home, the only residence he had from 1940 through the taxable years, was at Princeton. It was there he conducted all of his business, the business of the League. He had no duplication of living expenses and no traveling expenses within the meaning of section 23 (a). No deduction was intended under such

circumstances. Cf. *Barnhill* v. *Commissioner*, 148 Fed. (2d) 913; *Commissioner* v. *Flowers*, 326 U. S. 465; *George F. Thompson*, 6 T. C. 285; affd., 161 Fed. (2d) 185.

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

HARRON, *J.*, concurring: Petitioner asks for construction of certain provisions of the Internal Revenue Code, sections 22 (a); 22 (b) 8; 116 (h); 212; and 211. He contends that the Congress could not have intended that the income in question should be subject to income tax of the United States Government. On the point of intent, he makes a unique argument that the Congress should be presumed not to have intended application of these statutory provisions in a way which he contends would be in derogation of principles of international law. Sympathetic study of petitioner's arguments and theories leads to the conclusion, in my opinion, that the principles of international law referred to can not be employed in judicial construction of the pertinent statutory provisions. A realistic view must be that the Congress, in considering and enacting domestic or internal legislation, was not thinking anything about the possible conflicts or harmony with principles of international law, and it is of no avail to seek to determine the legislative intent relating to the internal revenue statutes against the history and growth of principles of international law. The plight of the petitioner, since he regards the respondent's determination as inequitable, must be said to be due to an absence of legislation to cover an unanticipated situation. Petitioner must admit that his indefinite stay in the United States and the initial entrance constitutes an unusual situation. If it is assumed that the courtesies which have been extended by the Government in the matter of entry into and temporary stay in the United States should be extended to exemption from the internal revenue statutory laws as a matter of comity, the Congress is probably the only branch of the Government which is able to deal with the matter, unless the executive branch officials are at present authorized to solve the problem in some way, which seems doubtful.

The type of relief sought here through judicial processes is blocked by the pattern of our constitutional system of government, which divides authority among the legislative and executive, "the political" departments of the Government, *Oetjen* v. *Central Leather Co.*, 246 U. S. 297; *Trost* v. *Tompkins*, 44 Atl. (2d) 226; *Sevilla* v. *Elizalde*, 112 Fed. (2d) 29; and the judicial. And even the argument about the possible influence of principles of international law runs against the fact that petitioner, although an official of the League of Nations, with a diplomatic status under article 7 of the Covenant of the League, was not sent here on an official mission to or with the *Government*

of the United States. Without credentials to our Government on some diplomatic mission, or official, even assuming diplomatic status to exist from the standpoint of the League, petitioner would appear to be in no better position than a person of diplomatic status in the territory of another state than that to which he is accredited.[1] It would appear that the Government of the United States is not under any obligation, under international law or treaty or act of Congress, to grant the *immunity* from taxation of income, which is really what petitioner desires. See Ogdon, Juridical Bases of Diplomatc Immunity, 1936, pp. 189–191.

The Congress has declared the position which the Government must take with respect to the League of Nations in the statute authorizing the United States to accept membership for the Government of the United States in the International Labor Organization, an international organization which was under the League. The statute, enacted June 19, 1934, provides: "But in accepting such membership the President shall assume on behalf of the United States, no obligation under the Covenant of the League." 48 Stat. 1183; U. S. C. A., Title 22, pars. 271, 272.

Petitioner's second approach is under subsection (h) of section 116, enacted as an amendment to the 1934 Revenue Act under a special bill, H. R. 7998, passed on August 27, 1935; 49 U. S. Stat. at Large, 908 (ch. 767). Senate Report No. 632 (Committee on Foreign Relations); and House Report No. 1759 (Ways and Means Committee), 74th Cong., 1st sess., give full report of the reasons for amending section 116. The answer to petitioner's argument about the intent of Congress with respect to subsection (h) is that the Congress did not give any "blanket" authorization to the Treasury Department to continue all of its prior practices under a broad policy, but gave authority to exclude from taxation only specified income to the extent specifically stated in the statute.

Petitioner cites *Estate of Alexander J. Shamberg*, 3 T. C. 131; affd., 144 Fed. (2d) 998, for purposes of considering construction of section 116 (h). I think that the *rationale* of the *Shamberg* case can not be employed in construing section 116 (h), because the customs under international law are exacting and precise in matters of defining "state," "foreign government," "international organization," "instrumentality of a state," and officials, employees, and the rank and status thereof; because the United States was not a member of the League of Nations; and for constitutional reasons.

---

[1] See Wheaton's International Law, 6th English ed. (1929), by A. B. Keith, vol. 1, p. 468:

"Bynkershock maintains that ambassadors, passing through the territories of another state than that to which they are accredited, are amenable to the local jurisdiction: both civil and criminal, in the same manner with other aliens, who owe a temporary allegiance to a state."

Upon consideration of the elaborate arguments of petitioner, I believe all of them must be considered to be ineffective, and that his only recourse is to appeal to the Congress for a special, private act of Congress.

JOHNSON, J., agrees with the above.