LOUIS VIAL, PETITIONER, ET AL.[1] *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 21448 to 21464, inclusive.    Promulgated October 5, 1950.

*George E. Cleary, Esq.*, for the petitioners.
*R. P. Hertzog, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge:* The Commissioner determined deficiencies in income tax against each of the petitioners for one or both of the years 1946 and 1947.

Section 22 (b) (8) provides that compensation of employees of foreign governments, to the extent provided in section 116, shall be excluded from gross income and exempt from tax.    Section 116 (h) (1) provides for the exemption of compensation paid to an employee of a foreign government, international organization or the Commonwealth of the Philippines, including a consular or other officer, or a nondiplomatic representative, received as compensation for official services to such government, if the employee is not a citizen of the United States, if the services are of a character similar to those performed by employees of the Government of the United States in foreign countries, and if the foreign government grants an equivalent exemption to employees of the Government of the United States performing similar services in such foreign country.    Section 116 (h) (2) provides that the Secretary of State shall certify to the Secretary of the Treasury the names of the foreign countries which grant an equivalent exemption to the employees of the Government of the United States performing services in such foreign countries, and the character of the services performed by employees of the Government of the United States in foreign countries.    The single issue in the present case is whether the petitioners are exempt under the above provisions and that depends upon whether Corporacion de Fomento

---

[1] Proceedings of the following petitioners are consolidated herewith : Hector Moreno, Docket No. 21449; Enrique Rogers, Docket No. 21450; Elias Arze, Docket No. 21451; Americo Albala, Docket No. 21452; Jorge Schneider, Docket No. 21453; Carlos Recine, Docket No. 21454; Renato Salazar, Docket No. 21455; Estanislao Fabres, Docket No. 21456; Rodolfo Turenne, Docket No. 21457; Raul Herrera, Docket No. 21458; Danilo Vucetich, Docket No. 21459; Pablo Risopatron, Docket No. 21460; Gonzalo Villaseca, Docket No. 21461; Marcos Orrego, Docket No. 21462; Sergio Perez, Docket No. 21463; Renato Orellana, Docket No. 21464.

de la Produccion (hereafter called Fomento) was a part of the Government of Chile for the purpose of section 116 (h), or whether it was as the Commissioner contends, a government-owned corporation, a separate instrumentality. The evidence in the case has been introduced through a stipulation of facts which is adopted as the findings of fact.

The petitioners filed individual income tax returns with the collector of internal revenue at Baltimore, Maryland.

The petitioners are citizens of the Republic of Chile and were employed in the United States during the taxable years by Fomento. They each received compensation from Fomento during the taxable years for services performed in the United States. They did not report that income on their returns but the Commissioner has held that it was taxable income to them.

Fomento, which is not a corporation as that term is understood in the United States, was established upon the enactment into law of Chilean Law No. 6334, dated April 29, 1939, as amended by Law No. 6640, dated August 5, 1940. It provided for the creation of Fomento as a legal person of unlimited life charged with a plan for the promotion of national production. Fomento has no stock or shareholders. Fomento is a "legal person" under Chilean law. That term describes any entity created by law as opposed to a natural person. Legal persons of public statute include the Government of Chile; the municipalities, Fomento, and. other portions of the Government. Another type is a legal person of private statute, which includes private corporations organized to carry on commercial enterprises for profit. Such corporations are not referred to in the Spanish language by the word "Corporacion" but are referred to as "Sociedad Anonima." A distinction between the two is that the one has a governmental or public function and exercises governmental powers, whereas the other one does not. A legal person of public statute usually receives funds from the public treasury derived from taxes, but may receive a portion of its funds from loans or other sources.

Fomento was administered and directed by a Council of 24, composed of the Minister of Economy and Commerce, acting as President, an Executive Vice-President to be nominated by the Council and appointed by the President of the Republic, two members named by each of the two legislative branches, six representatives of the President of the Republic of Chile, the President of the Mortgage Credit Bureau, the Executive Vice-President of each of the Agricultural Economy Institute, the Foreign Trade National Commission, the Institute of Industrial Credit, and the Mining Credit Bureau, and a representative of each of the Agricultural Credit Bureau, the National Agricultural Society, the Society for the Promotion of Manufacture,

the National Mining Society, the Chambers of Commerce of Chile, the Institute of Engineers of Chile. and the Confederation of Workers of Chile. The Mortgage Credit Bureau, the Agricultural Economy Institute, the Foreign Trade National Commission, the Institute of Industrial Credit, the Mining Credit Bureau, and the Agricultural Credit Bureau are government institutions, their officers are appointed by the President of the Republic, and they perform governmental functions. The National Agricultural Society, the Society for the Promotion of Manufacture, the National Mining Society, the Chambers of Commerce of Chile, the Institute of Engineers of Chile, and the Confederation of Workers of Chile are all nonprofit associations. Their membership, in the order named, consists of farmers, manufacturers, mining operators, commercial operators, engineers, and labor unions. The purpose of each, except the Institute of Engineers, is to improve the financial and economic position of its members. The purpose of the Institute of Engineers is to improve engineering standards in Chile.

The Council was (a) "to draw up a general plan for the promotion of national production intended to raise the standard of living of the population by means of development of the natural resources of the country and by decreasing the cost of production, and to improve the condition of the balance of international payments, keeping in carrying out the plan due proportion in the development of mining, agricultural, industrial and commercial activities, and attempting to satisfy the needs of the various regions of the country"; (b) to carry out, in collaboration with government, semi-government or private promotion institutions, studies intended to find the most adequate means of creating new products or increasing present production, improving the conditions of production as to quality, yield, and cost of production, and studies intended to facilitate the transportation, warehousing, and sale of products, in order that they may be used in their most satisfactory conditions and at the most convenient prices; (c) to carry on experiments in production or commerce based on the studies; (d) "to aid manufacture within the country or the importation of, machinery and other materials for production"; (e) to advance "measures intended to increase the consumption of national products or to obtain a greater participation of Chilean interests in industrial and commercial activities"; (f) "to study means for general financing of the plan for the promotion of production or for the specific financing of various works provided for by" the plan and to grant loans to natural or juridical Chilean persons; (g) "to receive voluntary gifts and contributions"; (h) to submit the General Regulations of Fomento and their amendments to the President of the Republic and to issue internal regulations to carry out the General Regulations,

and (i) "to do all the acts and enter into all the contracts * * * necessary for attaining the purposes of" Fomento.

The promotion plan was to take into consideration the funds for repair and construction of communication lines and means of transportation.

A production promotion fund was created by the law in order to meet the expenses of Fomento. The fund was to include 2 per cent of the product of certain loans and the difference between the interest on two types of loans, the income from a sales tax, contributions from the fiscal government, and gifts or contributions received, and by interests, amortizations, rents, collections for services, and other income of Fomento.

Fomento maintains a bank account and may sue and be sued in its own name in Chile. Certain departments of the Chilean Government maintain bank accounts and may sue and be sued in their own names.

Fomento has investigated the needs of the Chilean economy and has adopted and executed a broad national program to stimulate the promotion of that economy and to improve the standard of living of the Chilean people. Fomento was created for that purpose because of the national character of the undertaking and because of the need for many dollars which could only be met at the outset through loans from the Export-Import Bank and the International Bank for Reconstruction and Development, which loans could only be negotiated through inter-governmental borrowing.

Fomento conducts studies of various fields of natural resources and industry in Chile to secure wider or better use of natural resources and to promote production. Some of these studies consume years. Studies accounted for a major part of the time and activities of Fomento during the taxable years. The function of Fomento in making these studies is similar to that of a national resources planning board. Employees are sent to the United States to learn how to meet the problems and attain the objectives of the project. Fomento is the medium by which Chile obtains technical knowledge for its national programs. United States Government employees have visited Chile in order to assist in these projects. The principal fields in which Fomento is making studies are mining, agriculture, land reclamation, forestries, fisheries, iron and steel, coal, textiles, petroleum, chemicals, hydro-electric power, cement, and transportation. It attempts to take action first in those fields which will have the most beneficial effect on the foreign exchange position of Chile, which will do the most immediate good toward raising the standard of living and where no action would be taken without governmental intervention. Fomento formulates detailed plans based upon the studies, including the specific means by which the plan can be financed and carried out. Each plan is then

considered by the Council of Fomento and upon adoption becomes an approved project. Approval of a plan by the Council of Fomento does not require further endorsement provided necessary funds are available. Action is then taken to carry out the project.

Fomento, in carrying out approved projects, tries to work with private concerns or individuals in the construction or acquisition of the necessary facilities, and, except in the case of public utilities and the production of petroleum, to withdraw as rapidly thereafter as is feasible, leaving private enterprise in a position to carry out the project. The participation of Fomento may take different forms. The principal methods followed are to participate in the formation of a private corporation taking stock or debentures in return for money paid to the corporation, to loan money directly to private concerns, or to use both of the foregoing methods. The policy of Fomento is not to control but to maintain only a minority representation on the Board of Directors during the time that it participates in a project. The financial assistance of Fomento is essential because of the need for United States dollars in large quantities.

Fomento purchases the capital items necessary for an approved project in order to use its credit and to reduce costs by purchasing and shipping in large quantities. It does not act as a purchasing mission for the acquisition of supplies or other items required for the continuing operation of its projects. It takes temporary title to the property purchased.

Fomento participated in its project for the establishment of a steel industry in Chile and it holds one-third of the stock issued by a private corporation engaged in the steel business. It has also made loans to the company. Fomento contemplates the sale of its interest in the company as soon as private capital is able to buy that interest. It has advanced its agricultural projects by selling or leasing equipment to farmers on favorable terms, the Agricultural Credit Bureau acting as the collecting agency. It has a project to develop the petroleum reserves of Chile, all of which belong to the Chilean Government. The production of petroleum is solely a governmental right and function, all of which has been turned over to Fomento along with employees of the Department of Mines and Petroleum. The training of personnel is an important function of Fomento. It has established a national scholarship foundation so that employees may study in schools of the United States and may visit the United States to study.

Fomento secures its revenues and funds. (a) from taxes levied by Law 6640; (b) loans from the Export-Import Bank of Washington, D. C., and the International Bank for Reconstruction and Development; and (c) interest on project loans and dividends on stocks held in the furtherance of approved projects and other income. The

amounts received under (c) are only a small percentage of the amounts received under (a). The taxes for the support of Fomento were, during the taxable years, paid into the general funds of the Chilean Treasury earmarked for the use of Fomento. They included income taxes and inheritance taxes. Law 6640 also authorized the negotiation of loans by the President of Chile for the use of Fomento. Those loans are guaranteed by the official credit of the Chilean Treasury and it is under those provisions that Fomento has secured loans from the Export-Import Bank. Credit thus obtained can be and has been used outside of Chile only by the issuance of a supreme decree by the President pursuant to law enacted for the purpose.

No part of the income of Fomento inures to the benefit of any individual or private concern except as it is used by Fomento in its studies and projects.

The financial requirements of Fomento are submitted as a part of the national Chilean budget along with the budgets for all departments of the Chilean Government. The budget of Fomento is submitted to the Minister of Economy and Commerce, the Minister of Finance, and the President of the Republic for approval. The activities of Fomento are closely coordinated with those of the Minister of Economy and Commerce. The plans of classification, salaries, and lines of promotion of the staff of Fomento are subject to approval annually by the President of the Republic. The Comptroller General of the Republic has control of the income, expenses, and disbursements of Fomento.

Employees of Fomento pay Chilean social security taxes to the government agency set up to receive them from all Chilean Government employees. Separate agencies receive similar taxes of citizens not employed by the Chilean Government. Social security benefits paid to Chilean employees of Fomento are the same as those paid to other employees of the Chilean Government but differ from those paid to Chileans not employees of the Government.

The petitioner, Louis Vial, was an engineer. His duties were to supervise the dismantling and packing of a steel sheet and plate and tin mill purchased by Fomento for shipment to Chile and erection there as a part of the steel mill project sponsored by Fomento in Chile. Another petitioner was an electrical engineer who was sent to the United States to travel throughout this country inspecting electrical material and equipment to be utilized in the hydroelectric project sponsored by Fomento in Chile. Another was an engineer specializing in forestry and forest fire prevention methods, who was studying forestry practices in this country in connection with the wood and forestry project being sponsored by Fomento in Chile. The other petitioners, all engineers, performed similar services for Fomento.

Chilean employees of Fomento in the United States were held to be exempt from Federal income tax by a ruling of the Treasury Department issued on August 30, 1941. That ruling was withdrawn and the employees were held to be subject to Federal income tax on March 1, 1946, on the ground that Fomento was considered to be an entity separate from the Government of Chile.

The Secretary of State has certified to the Secretary of the Treasury, as required by section 116 (h) (2), that the Government of Chile granted citizen employees of the Government of the United States performing official services in Chile, an exemption equivalent to that granted by section 116 (h), and the character of the services performed by employees of the Government of the United States in Chile during the taxable years was similar to the character of the services performed in the United States by these petitioners.

The Secretary of the Treasury received a letter dated March 10, 1949, from the Secretary of State referring to Fomento, stating that several discussions had been had with representatives of the Chilean Government during the course of which emphasis was placed on the facts that employees of the United States agencies in Chile are granted tax exemption and Fomento is not a corporation in the sense that the term is used in American law but an integral part of the Chilean Government. It stated further that the State Department has had difficulty in explaining to those representatives why a rule to withhold exemption was made applicable to Fomento based upon a holding relating only to a corporation, incorporated under the laws of the State of New York, the organization and functions of which were quite different from those of Fomento. The names of a number of individuals, including the petitioners, were mentioned in the letter, after which the following appeared:

The department, therefore, since it has previously indicated that it regards employees of Fomento as employees of the Government of Chile, hereby cert.fies, in accordance with the provisions of section 116 (h) of the Internal Revenue Code, as amended, that the Chilean Government grants an equivalent exemption to the employees of the Government of the United States performing services in Chile and that the character of the services performed by employees of this Government in Chile is similar to the character of services performed in the United States by the individuals in question.

It is hoped that, in view of the adverse effect which the withdrawal of tax exemption from the employees of [Fomento] appears to be having on our relations with Chile and the Department's understanding that your Department is not under a legal obligation by virtue of any action of the Joint Congressional Committee on Internal Revenue Taxation or by any express provision of existing law to withhold exemption from Fomento, you will find it possible to again accord exemption to the employees of [Fomento].

The Secretary of the Treasury replied that the present proceedings would lead to a judicial settlement of the controversy.

The Chilean Government provides each employee of Fomento in the United States with an official passport. Such official passports are issued only to individuals regarded by the Chilean Government as its employees or officials. The visas which the United States Government grants to employees of Fomento classify them as government officials.

The Department of State has issued to five of the petitioners registration cards required under the Foreign Agents Registration Act of 1938. But the issuance of such cards had been discontinued before the other twelve petitioners entered the United States. The Department of State issued to four of the petitioners cards exempting them from the Selective Service Act and describing each as an official or employee of the Chilean Government. The remaining petitioners entered the United States after the period for which such cards were required.

The petitioners were paid with funds coming from the home office of Fomento in Chile.

Fomento is a part of the Chilean Government and its employees, including the petitioners, are employees of the Chilean Government who received their compensation for official services.

The argument of the Commissioner against the above holding is that the petitioners are employees of Fomento; Fomento is not the Government of Chile but is a separate instrumentality, "a Chilean Government-owned corporation"; and, therefore, the petitioners are not employees of a foreign government receiving their compensation for official services to it. The evidence shows that that reasoning is clearly unsound in so far as it is based upon the alleged fact that Fomento was "a Chilean Government-owned corporation". The stipulation contains evidence, including the opinions of qualified persons familiar with the laws of Chile, that Fomento was not a corporation within the meaning of that term as used in our law and there is no evidence to the contrary. "Sociedad Anonima" in Spanish law corresponds to "corporation" in our law. Fomento was not a Sociedad Anonima but quite a different legal person. There can be no doubt that Fomento was not actually a corporation as we understand it, and, furthermore, it' was unlike a corporation in many important respects. It had no stockholders or members and no provision was made for it to be owned by anyone. It was just a part of the government. Its governing body was fixed by law, the members of that Council were such ex-officio or were appointed by the legislative or executive branch of the government. Its operations were closely regulated by law and subject to supervision and approval by government departments and officers. Its purposes and activities were exclusively national in scope rather than for the benefit of any group such as

the members or owners of a corporation. It may have been similar to a corporation in some ways, but the same can be said of a number of agencies of the Government of the United States which are independent but at the same time a part of the government. The Maritime Commission was such an agency. A holding that Fomento was a corporation would be entirely inconsistent with the stipulation.

However, even though Fomento was not a corporation, it might still be an instrumentality, so separate from the government that its employees would not be employees of the government. The Commissioner does not urge such a theory and it does not appear to be sound. The laws of two countries usually differ and it is not necessary that an exact counterpart for Fomento be found in our government. Perhaps none exists. Nevertheless, Fomento was a part of the Government of Chile. It has been described by one qualified person as a national resources planning board, a part of the government. Some activities of the Maritime Commission were similar to some of Fomento. The same could be said of the Reconstruction Finance Corporation and, although it is a separate corporation, its employees are regarded as government employees. Fomento was created by a public law, as was the government, and not by a private law, as a corporation would be. Its head was a cabinet member and it was closely coordinated with his department. It is supported in a large part by taxes. Its international borrowings are on the credit of the nation. Its employees are considered government employees by the various branches of the Chilean Government and by our own Department of State. The purpose of section 116 (h) was to obtain reciprocity for employees of our government in foreign countries, *John Henry Chapman*, 9 T. C. 619, and the Secretary of State certifies that our government has employees in Chile doing work which corresponds to that done here by the employees of Fomento within the meaning of section 116 (h). Indeed, the Commissioner also recognized that Fomento employees were exempt under that section until, for some undisclosed reason, he changed his mind in 1946.

The Court, in reaching its conclusion that these petitioners are exempt, has considered not only that part of the stipulation referred to or discussed herein, but every portion of that stipulation, including some portions not favorable to the contention of the petitioners. The conclusion was reached because there was a preponderance of evidence in favor of it.

> *Decisions will be entered for the petitioners in Docket Nos. 21449, 21450, 21456, 21457, and 21458.*
>
> *Decisions will be entered under Rule 50 in Docket Nos. 21451 through 21455 and 21459 through 21464.*