## SINGER v. UNITED STATES.

## UNITED STATES v. SINGER.

### Nos. 5567, 5605.

Circuit Court of Appeals, Seventh Circuit.

March 25, 1936.

Frederick A. Brown, of Chicago, Ill. (G. Gale Roberson, of Chicago, Ill., of counsel), for appellant and cross-appellee.

Frank J. Wideman, Asst. Atty. Gen., and Sewall Key, Norman D. Keller, and Frederick W. Dewart, Sp. Assts. to the Atty. Gen. (Michael L. Igoe, U. S. Atty., of Chicago, Ill., of counsel), for the United States.

Before EVANS and SPARKS, Circuit Judges, and SULLIVAN, District Judge.

EVANS, Circuit Judge.

The issues in this case, while somewhat novel, are capable of simple statement. Mr. Singer, the taxpayer, a citizen of the United States, is (and has been for many years) consul in Chicago for the governments of Costa Rica and Nicaragua.

In this capacity he rendered services in the years 1921, 1922, and 1923 for various subjects of those governments for which he received compensation. He included such fees or remuneration in his Federal income tax returns and was assessed thereon. He paid the tax. In 1925, the Government, on its own motion, reexamined the facts and concluded that the taxpayer was not subject to an income tax on the sums by him received as consul for said governments and ordered refunds, together with six per cent. interest from the dates of payment. The total sum thus refunded was $8,398.42. Subsequently, the Government reconsidered its second act and reached the conclusion that said consul fees were subject to income tax and, on February 15, 1927, demanded the payment of the moneys which had been returned to taxpayer on June 18, 1926. Following this demand and non-payment by the taxpayer, this action was begun, in November, 1927.

The two questions are:

First, was the taxpayer subject to a Federal income tax upon the compensation by him received for services as consul in Chicago for these two foreign governments in the years 1921, 1922, and 1923?

Second, if the foregoing question be answered in the affirmative, was the Government entitled to interest from the date it paid the taxpayer the refunds or did interest run from the date of the demand by the Government?

The District Court, before whom the action was tried without a jury, answered the first question in the affirmative and, in answering the second, held that interest could be recovered from the date of the Government's demand, *only*.

██ That a resident citizen of the United States is subject to a tax on his earnings, including his fees as consul of foreign governments in the absence of treaty agreements, is, we think, not debatable. If support for this statement be necessary, it affirmatively appears in statute and department regulations. The income tax law clearly included him within its provisions. Section 213 of the Revenue Act of 1921 (42 Stat. 237). The Act of August 27, 1935 (26 U.S.C.A. § 116 (h), provided that wages and salaries of an employee of a foreign government, including consular and other officers, are exempt, *if such employee is not a citizen of the United States*, etc. Treasury Regulations 62, Article 86, under the Revenue Act of 1921, recognized as exempt the income of foreign officials including foreign consul. It specifically provided, however, that the compensation of *citizens of the United States*, who are officers or employees of a foreign government, *is*, however, *not exempt from a tax*.

██ The taxpayer here must therefore rely upon the treaties between the governments which he represents and the United States to find a bar to the levy of a tax on his income.

The pertinent provisions of the treaties are herewith set forth.

Article 10 of the treaty between the United States and Costa Rica, proclaimed in 1852 (10 Stat. 922), provides:

"It shall be free for each of the two high contracting parties to appoint consuls for the protection of trade, to reside in any of the territories of the other party; but before any consul shall act as such, he shall, in the usual form, be approved and admitted by the government to which he is sent; and either of the high contracting parties may except from the residence of consuls such particular places as they judge fit to be excepted. *The Costa Rican diplomatic agents* and *consuls shall enjoy in the territories of the United States whatever privileges, exemptions, and immunities are or shall be granted to agents of the same rank belonging to the most favored nation;* and in like manner the diplomatic agents and consuls of the United States in the Costa Rican territories, shall enjoy according to the strictest reciprocity whatever privileges, exemptions, and immunities are or may be granted in the Republic of Costa Rica to the diplomatic agents and consuls of the most favored nation."

Article 10 of the Treaty proclaimed in 1868 between the United States and Nicaragua (15 Stat. 555) provided in identical terms with those above (except as to name of country).

The treaties thereafter negotiated with twelve other countries provided:

"It is likewise agreed that the Consuls, their secretaries, officers and persons attached to the service of Consuls, *they not being citizens of the country in which the Consul resides,* shall be exempt from all public service, and also from all kind of taxes, imposts and contributions, except those which they shall be obliged to pay on account of commerce, or their property, to which the citizens and inhabitants, native and foreign, of the country in which

they reside are subject, being in everything besides subject to the laws of the respective States. The archives and papers of the Consulates shall be respected inviolably, and under no pretext whatever shall any magistrate seize, or in any way interfere with them." (Art. 28)

The taxpayer argues that the treaties negotiated by the United States Government with the governments of Costa Rica and Nicaragua contain no such limitation as is found in all or nearly all the treaties with other countries. The latter provide that the consuls and their employees shall be exempt from "public service, and also from all kind of taxes, imposts and contributions," etc. There are certain exceptions specifically covered, in which we are not interested. But, the following exception is significant, and upon its application the case turns: *"They not being citizens of the country in which the Consul resides."*

The treaties with Nicaragua and Costa Rica do not contain this language. They provide that the consuls "shall enjoy * * whatever privileges, exemptions, and immunities are or shall be granted to agents of the same rank belonging to the most favored nation."

The particular question, therefore, is— What effect, if any, does the absence of the clause "they not being citizens of the country in which the Consul resides" have upon the taxpayer's rights?

Taxpayer relies upon the ruling of the court in Santovincenzo v. Egan, 284 U.S. 30, 34, 52 S.Ct. 81, 83, 76 L.Ed. 151. Commenting upon the omission in one article in a treaty which was found in other treaties, the court said:

"The omission from Article VI of the Treaty with Persia of a clause of this sort, so frequently found in treaties of this class, must be regarded as deliberate."

. It may not be that with the two treaties under consideration the omission was deliberate, because such treaties were negotiated some seventy years ago, and at the time of their negotiation income taxes were not authorized by the Constitution of the United States. Yet, it may fairly be said that the continuance of the omission of the provision in these two treaties, in view of the different provision in the treaties with other governments, is significant. Likewise, while not accepting the taxpayer's argument that the United States is taxing the foreign government when it taxes the consul or representative of the foreign government, we are convinced that the treaties which the United States has heretofore negotiated with foreign governments recognize the status of a foreign government's representative, be he consul, secretary, or other employee of consul, to be different from that of other citizens of the United States. His income may not be taxed save as the treaty permits it. At least, the treaties which have been negotiated in all cases save Nicaragua and Costa Rica have expressly recognized the difference in status of an alien consul from one who is a citizen of the United States.

It is apparently the universal policy of the leading governments of the world to cover the subject of privileges and obligations of consuls, etc., of foreign governments by treaties. We assume that if a treaty agreement provided that the official salary of a consul, be he citizen of the United States or an alien, shall be exempt from the operation of income tax laws of the United States, no act of Congress could validly make it subject thereto. In the instant case, fortunately there is no such conflict or clash between Congressional enactment and the treaties. For all of the treaties except those with the two governments represented by taxpayer imply, by the clause above quoted, that taxes may be imposed upon their consuls, if they be citizens of the United States.

We think it fair to assume that the treaties had for their object the legitimate protection of the consuls of Nicaragua and Costa Rica. Those officials were to receive the same tax exemption as consuls representing the most favored nations at the date of negotiation. There was no distinction made between consul who were alien and those who were United States citizens. Tax and other exemptions were accorded to all consuls. It was with such exemptions that the treaties dealt. The consuls of said countries were to enjoy whatever "privileges, exemptions and immunities are or shall be granted to agents of the same rank belonging to the most favored nation."

Several questions naturally arise: To what date did this reference apply? Were the rights fixed and inviolate as of said date? What was meant by the term "agents of the same rank"? Could there be a difference in rank based upon United States citizenship status? Was it meant that if any consul of any other country were exempt, then like exemptions must

be accorded consuls of Nicaragua or Costa Rica?

It must be admitted that the answer to the vital question is not free from serious doubt. On the one side there is the strong inclination to subject the taxpayer, a citizen and a resident of the United States, to the same treatment that he would be subjected to, if he were not getting his income in the United States in a foreign official capacity, or if he represented any other country than Nicaragua or Costa Rica. As opposed to such a position, however, is the existence of the clause present in the other treaties negotiated years later when apparently the parties believed it necessary to insert such clauses in order to make the United States citizen acting as consul for foreign governments subject to the Federal income tax. If a new treaty were necessary to cover the tax exemption of a foreign consul who is a citizen of the United States, would not a similar change be required in a treaty with Nicaragua or Costa Rica? If language used in a treaty at the time it was negotiated did not recognize the difference between alien and United States citizen consul, would not an amendment be necessary to later justify a distinction between such consul? If there is to be any change in the tax rights and privileges of representatives of foreign governments, it would seemingly be far better if the United States Government, as such, accomplished the change through the usual channel of treaty than by attempting it through acts of Congress, Regulations of the Internal Revenue Department, or construction of disputed or doubtful clauses in ancient treaties, by the courts.

It is not without hesitation that we reach the conclusion that under the treaties as they exist the income derived by the taxpayer, even though he be a citizen of the United States and therefore, generally speaking, is, and should be, subject like any other citizen to an income tax on compensation for services, yet his profits derived from services as consul may not, *unless he waives his objection,* be included in his taxable income.

In reference to the Government's appeal in No. 5605 there is no occasion to consider the date when interest should begin to run because there is no recovery upon which interest may be computed. The judgment of the District Court is reversed with directions to proceed in accordance with the views here expressed.