EDWARD YING AND FELILU YING, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 38092-87.          Filed August 31, 1992.

*Jared J. Scharf,* for petitioner Felilu Ying.

*Morton A. Smith* and *Vincent R. Barrella,* for petitioner Edward Ying.

*Peter J. Gavagan,* for respondent.

## OPINION

WHALEN, *Judge:* This case is before the Court to decide petitioners' motion for summary judgment and respondent's amended cross-motion for partial summary judgment. The sole issue raised in petitioners' motion is whether the salaries and wages which they received from the United Nations and UNICEF during the years in issue are exempt from Federal income tax under section 893. Unless otherwise stated, all section references are to the Internal Revenue Code. In respondent's cross-motion for partial summary judgment, the Commissioner asserts that petitioners' salaries and wages are "subject to Federal income taxation pursuant to the terms of the Convention on the Privileges and Immunities of the United Nations."

## *Background*

In June of 1968, petitioner Felilu Ying became employed as a staff member of the United Nations. During each of the taxable years in issue, until her resignation in June of 1985, she was employed by the United Nations as an accounting clerk and she received salaries and wages from that organization as compensation for her services.

In June of 1969, petitioner Edward Ying became employed by the United Nations Children's Fund (UNICEF) as a member of its staff. During each of the taxable years in issue, until his dismissal in December of 1985, he was employed by UNICEF to prepare budgets and he received salaries and wages from that organization as compensation for his services.

Neither petitioner was a citizen of the United States during any of the taxable years in issue or at any time prior to those years. Mr. Edward Ying was a citizen of Jamaica, and Ms. Felilu Ying was a citizen of the Republic of the Philippines. Under the U.S. immigration laws, however, both petitioners had obtained the status of "lawfully admitted to the United States for permanent residence". Ms. Felilu Ying had received an Alien Registration Card from the Immigration and Naturalization Service reflecting that status on or about October 12, 1972. Mr. Edward Ying had received an

Alien Registration Card from the Immigration and Naturalization Service on or about April 23, 1974.

Before obtaining permanent resident status and as a condition for obtaining it, both petitioners had executed a U.S. Department of Justice Immigration and Naturalization Service form, Form I-508A, "Waiver of Rights, Privileges, Exemptions and Immunities (Under Section 247(b) of the Immigration and Nationality Act)", and both of them had filed the form with the Attorney General of the United States. (Throughout this opinion, we refer to Form I-508A as the waiver.) Ms. Felilu Ying executed her waiver on October 12, 1972, using her maiden name, Felilu G. Amon, and Mr. Edward Ying executed his waiver on April 17, 1974.

In a notice of deficiency sent to petitioners, respondent determined the following deficiencies in and additions to their Federal income tax:

*Additions to tax*

| Year | Deficiency | Sec. 6653(b) | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6651(a)(1) |
|------|-----------|--------------|-----------------|-----------------|-----------------|
| | | | | 50% interest on: | Overassessment [1] |
| 1981 | $7,295 | $3,754 | - - - | - - - | - - - |
| 1982 | 9,841 | - - - | $5,544 | $11,088 | $(312) |
| 1983 | 8,641 | - - - | 4,321 | 8,641 | - - - |
| 1984 | 18,532 | - - - | 9,266 | 18,532 | - - - |
| 1985 | 8,248 | - - - | 8,121 | 16,243 | (1,799) |

[1] See sec. 6653(d).

In computing the above deficiencies, the principal adjustment made by respondent was to increase petitioners' taxable income by the amount of certain payments which respondent alleges were made to them by the United Nations and UNICEF as reimbursement for their Federal and State income taxes. Respondent also determined that petitioners were liable for self-employment tax on such amounts. Finally, respondent determined that all or a part of the underpayment of tax required to be shown on each of the subject returns was due to fraud.

In an amended answer, respondent alleges the following deficiencies in and additions to petitioners' Federal income tax:

| | | | Additions to tax | | |
|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(b) | Sec. 6653(b)(1) | Sec. 6653(b)(2) | Sec. 6661 |
| | | | | 50% interest on: | |
| 1981 | $20,782 | $10,497 | - - - | - - - | - - - |
| 1982 | 16,791 | - - - | $9,019 | $16,791 | $4,198 |
| 1983 | 20,853 | - - - | 10,427 | 20,853 | 5,213 |
| 1984 | 2,723 | - - - | 1,362 | 2,723 | - - - |
| 1985 | - - - | - - - | - - - | - - - | - - - |

In computing the deficiencies set forth in the amended answer, respondent continues to allege that petitioners failed to report all of their salaries and wages, and respondent continues to allege that both petitioners are liable for the fraud addition. Respondent also alleges, for the first time, that each petitioner improperly excluded salaries and wages from gross income by claiming the foreign earned income exclusion under section 911. Finally, respondent concedes in the amended answer that petitioners are not subject to self-employment tax, as determined in the notice of deficiency.

Before respondent was permitted to file the amended answer, described above, petitioners objected to it for a number of reasons, including their contention that certain allegations in the amended answer would give rise to a conflict of interest between petitioners. After the Court permitted respondent to file the amended answer, Mr. Ying retained a different attorney to represent him in this proceeding. However, petitioners now state that the conflict of interest between them has been resolved and we perceive no material difference in the positions advanced on their behalf.

We note that petitioners filed an amended petition in which they claim refunds on the ground that they overpaid their taxes for each of the years 1981 through 1985. The amended petition states, "The Commissioner erroneously neglected to exempt from income the wages earned by petitioner wife." Petitioners allege the following facts in support of that contention:

At all pertinent times, the petitioner wife was a salaried employee of an international organization, i.e., the United Nations, earning wages and salary in that capacity. At all pertinent times, petitioner wife was a citizen of the Republic of the Phillipines [sic]. Accordingly, the wages and salaries of petitioner wife were exempt from taxation pursuant to Internal Revenue Code section 893(a)(1). Petitioners erroneously reported said wages and salaries on their U.S. Individual Income Tax Returns. Petitioners overreported their income and overpaid their tax and are entitled to a refund.

Furthermore, petitioners do not allege any facts concerning the limit on the amount of a refund imposed by section 6512(b)(3) which applies when this Court determines an overpayment. In fact, we note that the reply of petitioner Edward Ying to respondent's amended answer to amended petition denies that the notice of deficiency is timely with respect to petitioners' 1981, 1982, and 1983 returns.

Respondent raises no procedural objection to considering petitioners' assertion that both of them are entitled to exclude the wages and salaries which they received from the United Nations and UNICEF during each of the years in issue.

At the time they filed their petition herein, petitioners resided in Flushing, New York.

## Discussion

### Petitioners' Motion for Summary Judgment

The issue raised in petitioners' motion for summary judgment is whether the wages and salaries which they received from the United Nations and UNICEF during 1981 through and including 1985 are exempt from Federal income tax under section 893. That section provides as follows:

SEC. 893. COMPENSATION OF EMPLOYEES OF FOREIGN GOVERN-
MENTS OR INTERNATIONAL ORGANIZATIONS.

(a) RULE FOR EXCLUSION.—Wages, fees, or salary of any employee of a foreign government or of an international organization * * * received as compensation for official services to such government or international organization shall not be included in gross income and shall be exempt from taxation under this subtitle if—

(1) such employee is not a citizen of the United States, or is a citizen of the Republic of the Philippines (whether or not a citizen of the United States) * * *

The parties agree that the United Nations and UNICEF are "international organizations" as that phrase is used in section 893. See sec. 7701(a)(18). They also agree that both petitioners were employed by those organizations during each of the years in issue, and that the wages and salaries which each of them received were paid as compensation for official services to those organizations. Finally, the parties agree that neither petitioner was a citizen of the United States. Therefore, ostensibly both petitioners met the requirements of section 893(a)(1) during each of the years in issue.

Nevertheless, respondent determined that petitioners are required to report as taxable income the wages and salaries which they received during each of the years in issue from the United Nations and UNICEF. In objecting to petitioners' motion, respondent takes the position that the exemption under section 893 is not applicable to either petitioner for any of the years in issue. The Commissioner bases that position on the fact that, prior to all of the years in issue, both petitioners executed and filed with the Attorney General of the United States a waiver on U.S. Department of Justice Immigration and Naturalization Service Form I-508A which states as follows:

Waiver of Rights, Privileges,
Exemptions and Immunities

(Under Section 247(b) of the
Immigration & Nationality Act)

File No. _____

I, (name) _____ believing that I have an occupational status entitling me to a nonimmigrant classification under paragraph 15(A) (Government official) 15(E) (Treaty Trader) or 15(G) (International Organization Representative), of Section 101(a) of the Immigration and Nationality Act and desiring to acquire and/or retain the status of an alien lawfully admitted for permanent residence, do hereby waive all rights, privileges, exemptions and immunities which would otherwise accrue to me under any law or executive order by reason of such occupational status.

The Attorney General is charged with the administration and enforcement of the Immigration and Nationality Act. Immigration and Nationality Act, ch. 477, tit. I, sec. 103(a), 66 Stat. 163, 173 (1952) (current version at 8 U.S.C. sec.

1103 (1988)). He promulgated the above waiver pursuant to section 247(b) of that Act. 8 U.S.C. sec. 1257(b) (1988). We discuss section 247 of the Immigration and Nationality Act in further detail below.

As authority for respondent's position that petitioners are not eligible for the benefits of section 893 after filing the above waiver, respondent cites subparagraphs 1.893-1(b)(1) and (4), Income Tax Regs. Those subparagraphs of the regulation state as follows:

(b) *Employees of international organizations—*(1) *Exempt from tax.* Except to the extent that the exemption is limited by the execution and filing of the waiver provided for in section 247(b) of the Immigration and Nationality Act and subject to the provisions of sections 1, 8, and 9 of the International Organizations Immunities Act (22 U.S.C. 288, 288e, 288f), wages, fees, or salary of any officer or employee of an international organization (as defined in section 7701(a)(18)) received as compensation for official services to that international organization is exempt from Federal income tax, if that officer or employee (i) is not a citizen of the United States or (ii) is a citizen of the Republic of the Philippines (whether or not a citizen of the United States).

\* \* \* \* \* \* \*

(4) *Effect of waiver.* An officer or employee of an international organization who executes and files with the Attorney General the waiver provided for in section 247(b) of the Immigration and Nationality Act (8 U.S.C. 1257(b)) thereby waives the exemption conferred by section 893 of the Code. As a consequence, that exemption does not apply to income received by that individual after the date of filing of the waiver.

Petitioners argue that the language of section 893 is "unequivocal and unambiguous", that each petitioner meets all of the requirements of section 893, and that each of them is entitled to exclude the salaries and wages received from the United Nations and UNICEF during each of the taxable years in issue. They acknowledge filing waivers with the Attorney General under section 247(b) of the Immigration and Nationality Act, but, they contend, that fact is "entirely irrelevant" to the question whether their salaries and wages are eligible for the exemption under section 893.

Petitioners advance four principal arguments in support of their position that their wages and salaries are exempt under section 893. First, they argue that if the regulations are interpreted to mean that a taxpayer becomes ineligible for any benefit under section 893 after a waiver is filed, then the

regulations are invalid because they thwart the plain meaning of section 893 and impose a requirement not found in section 893. Petitioners contend that there is no justification to disregard the plain meaning of the statute and to review the legislative history of section 893 for a different meaning. Moreover, petitioners argue that in using the legislative history of section 893 to find a different meaning, respondent has misconstrued the legislative history of section 893 which is "vague and ambiguous".

Second, petitioners argue that subparagraphs 1.893-1(b)(1) and (4), Income Tax Regs., are invalid and beyond the scope of the Secretary's authority under section 7805. They argue that the regulations interpret the Immigration and Nationality Act, which is not a revenue statute. Therefore, they argue, the regulations are contrary to section 7805, which gives the Secretary of the Treasury authority to interpret revenue statutes and does not authorize the Secretary to interpret nontax statutes.

Third, petitioners argue that section 247(b) of the Immigration and Nationality Act was not intended by Congress to effect a loss of benefits under section 893 in the case of a person who obtains permanent residence status. According to petitioners, assuming that section 247(b) of the Immigration and Nationality Act was "intended to place resident aliens on an equal footing with citizens", it was not intended to apply to section 893 because the benefits of that provision can be enjoyed by citizens of the United States who are also citizens of the Republic of the Philippines. Petitioners argue, "citizens do not lose their exclusion from gross income or their exemption from taxation (if they are also citizens of the Republic of the Philippines and are employed by an international organization or a foreign government)" and, therefore, those benefits are not lost upon attainment of permanent resident status.

Finally, petitioners note that section 1.893-1(b)(4), Income Tax Regs., states that, by filing a waiver, an officer or employee of an international organization "waives the *exemption* conferred by section 893". (Emphasis supplied.) They point out that section 893(a) provides not only that qualifying wages and salary "shall be exempt", but also that such moneys "shall not be included in gross income". Thus, according to petitioners, section 893(a) gives a double benefit, an

exemption and an exclusion, and by filing a waiver, they waived the former but not the latter.

In order to better understand the nature of the waiver prescribed by section 247(b) of the Immigration and Nationality Act and its effect on an alien's eligibility for the benefits of section 893, it is helpful to review the statutory framework governing alien migration into this country. The current framework was established by the Immigration and Nationality Act. This was a comprehensive and complete revision by Congress of the laws covering the admission of aliens into this country.

Section 101(a)(3) of the Immigration and Nationality Act, 8 U.S.C. sec. 1101(a)(3) (1988), defines an alien as "any person not a citizen or national of the United States". The term "alien" encompasses two groups of people, immigrants and nonimmigrants. E.g., *International Longshoremen's & Warehousemen's Union v. Meese,* 891 F.2d 1374, 1380 (9th Cir. 1989).

The first group, nonimmigrants, are aliens who are generally admitted to this country only for a limited period of time and for a specific purpose. See 8 U.S.C. sec. 1184(a) (Supp. 1990); *International Longshoremen's & Warehousemen's Union v. Meese, supra.* In defining nonimmigrants, Congress intended "to provide for the needs of international diplomacy, tourism, and commerce, each of which requires that aliens be admitted to the United States from time to time and all of which would be hampered if every alien entering the United States were subject to a quota and to the more strict entry conditions placed on immigrant aliens." *Elkins v. Moreno,* 435 U.S. 647, 665 (1978). (Fn. ref. omitted.)

As originally enacted, section 101(a)(15) of the Immigration and Nationality Act, 8 U.S.C. sec. 1101(a)(15) (1952), defined nine classes of nonimmigrants. For example, it is relevant for purposes of this case to note that section 101(a)(15)(G) of the Act defines as nonimmigrant aliens the following five categories of persons who are employed by, or who represent a foreign government, before an international organization, such as the United Nations:

(G)(i) a designated principal resident representative of a foreign government recognized de jure by the United States, which foreign government

is a member of an international organization entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act (59 Stat. 669), accredited resident members of the staff of such representatives, and members of his or their immediate family;

(ii) other accredited representatives of such a foreign government to such international organizations, and the members of their immediate families;

(iii) an alien able to qualify under (i) or (ii) above except for the fact that the government of which such alien is an accredited representative is not recognized de jure by the United States, or that the government of which he is an accredited representative is not a member of such international organization, and the members of his immediate family;

(iv) officers, or employees of such international organizations, and the members of their immediate families;

(v) attendants, servants, and personal employees of any such representative, officer, or employee, and the members of the immediate families of such attendants, servants, and personal employees;

[8 U.S.C. sec. 1101 (a)(15)(G) (1952).]

The above statute remained unchanged during the years in issue. See 8 U.S.C. sec. 1101(a)(15)(G) (1988).

In passing, we note that Congress defined the phrase "international organization" in section 101(a)(15)(G)(i) of the Immigration and Nationality Act by reference to the definition of that phrase in the International Organizations Immunities Act, ch. 652, tit. I, sec. 1, 59 Stat. 669, 22 U.S.C. sec. 288 (1988), that is, "as a public international organization in which the United States participates * * * and which shall have been designated by the President * * * as being entitled to enjoy the privileges, exemptions, and immunities" provided in the Act. Alien employees of international organizations, such as the United Nations and UNESCO, fall under section 101(a)(15)(G)(iv) of the Immigration and Nationality Act, quoted above.

The second group of aliens, "immigrants", includes every alien who does not fall within one of the classes of non-immigrant aliens which are specified by section 101(a)(15) of the Immigration and Nationality Act, 8 U.S.C. sec. 1101(a)(15) (1988). Generally, immigrants are aliens who apply for permanent admission to the United States. They are subject to numerical quota limits established by Congress and are admitted according to a system of preferences. *International Longshoremen's & Warehousemen's Union v. Meese, supra.*

The term "lawfully admitted for permanent residence" is defined as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. sec. 1101(a)(20) (1988). An immigrant achieves that status in the first instance by complying with any applicable numerical limitations and with certain other statutory requirements for admission. See generally *Saxbe v. Bustos,* 419 U.S. 65, 68 (1974). If an individual is a lawful permanent resident of the United States, then he or she is treated as a "resident alien" for Federal income tax purposes. Sec. 7701(b)(1)(A)(i).

The Immigration and Nationality Act declares a presumption that every alien is an immigrant, and thus is subject to the numerical quota limits and other restrictions applicable to immigrants, unless he or she establishes entitlement to nonimmigrant status under one of the classes of nonimmigrant aliens set forth in section 101(a)(15). Immigration and Nationality Act, sec. 214(b), 8 U.S.C. sec. 1184(b) (Supp. 1990). Significantly, this presumption does not apply in the case of "An alien who is an officer or employee of any foreign government or of any international organization entitled to enjoy privileges, exemptions, and immunities under the International Organizations Immunities Act". *Id.* In that case, the statute provides that the alien "shall not be entitled to apply for or receive an immigrant visa, or to enter the United States as an immigrant unless he executes a written waiver in the same form and substance as is prescribed by section 247(b)." *Id.*

Section 247 of that Act, 8 U.S.C. sec. 1257 (1988), provides as follows:

SEC. 247. ADJUSTMENT OF STATUS OF CERTAIN RESIDENT
ALIENS TO NONIMMIGRANT STATUS; EXCEPTIONS.

(a) The status of an alien lawfully admitted for permanent residence shall be adjusted by the Attorney General, under such regulations as he may prescribe, to that of a nonimmigrant under paragraph (15)(A), (15)(E), or (15)(G) of section 101(a), if such alien had at the time of entry or subsequently acquires an occupational status which would, if he were seeking admission to the United States, entitle him to a nonimmigrant status under such sections. As of the date of the Attorney General's order making such adjustment of status, the Attorney General shall cancel the record of

the alien's admission for permanent residence, and the immigrant status of such alien shall thereby be terminated.

(b) The adjustment of status required by subsection (a) shall not be applicable in the case of any alien who requests that he be permitted to retain his status as an immigrant and who, in such form as the Attorney General may require, executes and files with the Attorney General a written waiver of all rights, privileges, exemptions, and immunities under any law or any executive order which would otherwise accrue to him because of the acquisition of an occupational status entitling him to a nonimmigrant status under paragraph (15)(A), (15)(E), or (15)(G) of section 101(a).

Under sections 214(b) and 247 of the Immigration and Nationality Act, therefore, an alien who qualifies for nonimmigrant status under section 101(a)(15)(G) of the Act, as an officer or employee of an international organization, such as the United Nations, is ineligible to obtain or retain the status of an alien lawfully admitted for permanent residence, unless he or she files with the Attorney General the written waiver described in section 247(b). Under the waiver, an alien waives "all rights, privileges, exemptions, and immunities under any law or any executive order which would otherwise accrue to him because of the acquisition of an occupational status entitling him to a nonimmigrant status under paragraph * * * (15)(G) of section 101(a)." In effect, section 247 of the Immigration and Nationality Act requires an alien who is employed by an international organization to choose between certain of the rights, privileges, exemptions, and immunities which accrue to him by reason of his occupation, on the one hand, and the benefits of immigrant status, on the other hand.

In this case, both petitioners were aliens who were employed by "international organizations" within the meaning of section 101(a)(15)(G)(iv) of the Immigration and Nationality Act and, by reason of that occupational status, each of them was entitled to nonimmigrant classification under section 101(a)(15) of the Immigration and Nationality Act. Accordingly, neither of them was eligible to obtain or retain immigrant classification, unless he or she filed the written waiver prescribed by section 247(b) of the Immigration and Nationality Act. Immigration and Nationality Act, sec. 214(b), 8 U.S.C. sec. 1184(b) (Supp. 1990). They both chose to file the waiver, and the issue presented in this case

is whether, in doing so, either or both of them waived eligibility for the benefits provided under section 893.

Section 247(b) of the Immigration and Nationality Act does not enumerate the rights, privileges, exemptions, and immunities which must be waived by an alien in order to obtain or retain an immigrant visa. Nevertheless, in the case of an alien employee of an international organization, it is clear that Congress intended the waiver under section 247(b) of the Act to cover certain of the privileges, exemptions, and immunities provided by the International Organizations Immunities Act.

Three points suffice to disprove petitioners' contrary assertion. First, the International Organizations Immunities Act was the vehicle by which Congress conferred privileges and immunities upon international organizations and the officials and employees thereof. Congress passed the International Organizations Immunities Act in 1945, only 6 years before the Immigration and Nationality Act, for the purpose of extending "certain privileges, exemptions, and immunities to international organizations and to the officers and employees thereof". H. Rept. 1203, 79th Cong., 1st Sess. 1 (1945). The need for the legislation had been prompted by the "increased activities of the United States in relation to international organizations" after World War II and, of significance for purposes of this case, by "the probability that the United Nations Organization may establish its headquarters in this country". *Id.* at 2.

Second, section 214(b) of the Immigration and Nationality Act makes specific reference to the "privileges, exemptions, and immunities under the International Organizations Immunities Act" and states that an alien who is entitled to enjoy those privileges, exemptions, and immunities is not entitled to immigrant status, unless he executes a written waiver under section 247(b) of the Immigration and Nationality Act.

Third, section 101(a)(15)(G) of the Immigration and Nationality Act, which is referred to in section 247(b) of the Act, defines the term "international organization" as one "entitled to enjoy privileges, exemptions, and immunities as an international organization under the International Organizations Immunities Act (59 Stat. 669)." Furthermore, the International Organizations Immunities Act amended the

Internal Revenue Code of 1939 to insert the predecessor of section 7701(a)(18) which defines the phrase "international organization" for purposes of the Internal Revenue Code.

It follows from the above that in order to determine the scope of a waiver under section 247(b) of the Immigration and Nationality Act, in the case of an alien employee of an international organization, we must first understand what privileges, exemptions, and immunities are accorded to such persons by the International Organizations Immunities Act. Significant among those privileges, exemptions, and immunities is eligibility for the tax benefits provided under section 893. The International Organizations Immunities Act amended the predecessor of section 893, section 116(h) of the Internal Revenue Code of 1939, to specifically include, as exempt from tax, the wages, fees, or salaries paid to alien employees of international organizations. International Organizations Immunities Act, ch. 652, tit. I, sec. 4(b), 59 Stat. 669, 670 (1945). Prior to that amendment, section 116(h) allowed an exclusion only for wages, fees, or salary of alien employees of a foreign government. The wages, fees, and salaries paid by international organizations to their employees were subject to U.S. tax. *Chapman v. Commissioner,* 9 T.C. 619 (1947).

Thus, we find no basis for petitioners' contention that the waiver prescribed by section 247(b) of the Immigration and Nationality Act has nothing to do with the benefits provided by section 893. To the contrary, eligibility for section 893 is an important benefit given to alien employees of international organizations under the International Organizations Immunities Act. It is clearly one of the rights, privileges, exemptions, and immunities "which would otherwise accrue to * * * [the alien] because of the acquisition of an occupational status entitling him to a nonimmigrant status under paragraph * * * (15)(G) of section 101(a)." Immigration and Nationality Act, sec. 247(b), 8 U.S.C. sec. 1257(b) (1988). We address the precise effect which the waiver has on eligibility for the exemption under section 893 in further detail below. At this point, it is enough to understand that Congress intended the waiver to limit, in some fashion, eligibility for the benefits under section 893, contrary to petitioners' argument that the waiver has no effect on section 893.

If there could be any doubt about that point, it is dispelled by the fact that, 2 years later, when Congress enacted the Internal Revenue Code of 1954, it described section 893 in both of the committee reports which form a part of the legislative history of that provision, as follows:

SEC. 893. COMPENSATION OF EMPLOYEES OF FOREIGN GOVERN-
MENTS OR INTERNATIONAL ORGANIZATIONS.

This section, relating to exemption from United States tax of the salaries and wages of alien employees of foreign governments and international organizations, corresponds to section 116(h), 1939 Code. No change in substance is intended to be made in the scope of the exemptions as accorded by section 116(h), as in effect at the present time. *Thus, to the extent that the exemption provided by section 116(h) has been modified in the case of alien individuals with immigrant status, by legislation passed subsequent to the enactment of section 116(h), this section will be deemed subject to such modification.* [H. Rept. 1337, 83d Cong., 2d Sess. A246 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 418 (1954); emphasis supplied.]

The above statement is calculated to foreclose the very argument made by petitioners in this case. In effect, notwithstanding the broad language used in section 893, Congress stated its intention to limit the exemption "in the case of an alien individual with immigrant status" to the same extent "that the exemption provided by section 116(h) had been modified * * * by legislation passed subsequent to the enactment of section 116(h)", that is, by sections 214 and 247 of the Immigration and Nationality Act, which was enacted in 1952, 6 years after section 116(h) was added to the Internal Revenue Code of 1939.

With the above as background, we can dispose of one of the arguments made by petitioners. They characterize respondent's position as boiling down to "what the statute gives, the regulations take away" and they assert that "the purpose of the waiver is confined to considerations of immigration law, not tax law" and that subparagraphs 1.893-1(b)(1) and (4), Income Tax Regs., interpret immigration laws and not the tax law. Throughout their argument, therefore, petitioners fail to perceive, or refuse to acknowledge, that the exemption provided by section 893 is one of the rights, privileges, exemptions, and immunities of an alien employee of an international organization which is covered by a waiver under section 247(b) of the Immigration and Nationality Act.

Contrary to petitioners' argument, the regulations under section 893 do not create a restriction on eligibility for the exemption. They simply recognize that eligibility for the exemption may be restricted by section 214(b) or 247(b) of the Immigration and Nationality Act in the case of an alien who files a waiver in order to keep immigrant status. The waiver would have the same legal effect even if the regulations at issue had not been promulgated. The regulations are merely the Secretary's attempt to prescribe rules which take into account the effect which the waiver has on section 893. They are a valid exercise of the Secretary's authority under section 7805(a), which provides:

the Secretary shall prescribe all needful rules and regulations for the enforcement of this title, including all rules and regulations as may be necessary *by reason of any alteration of law in relation to internal revenue.* [Emphasis supplied.]

Section 7805 does not prohibit the Secretary from taking into consideration laws that affect the interpretation and enforcement of the Internal Revenue Code, and it was within the Secretary's authority under section 7805 to describe the effect of the waiver in subparagraphs 1.893-1(b)(1) and (4), Income Tax Regs. We reject petitioners' contention to the contrary.

In order to fully understand the scope of the waiver in the case of an alien employee of an international organization, it is necessary to know more about the privileges, exemptions, and immunities provided to such individuals under the International Organizations Immunities Act. Some of those privileges, exemptions, and immunities apply only to persons who are aliens. For example, an alien employee of an international organization may import his baggage and effects into this country free of customs, duties, and internal revenue taxes. International Organizations Immunities Act, sec. 3, 22 U.S.C. sec. 288b (1988). Similarly, employees of an international organization, "other than nationals of the United States", are subject to the same laws regulating (1) entry into and departure from the United States, (2) alien registration and fingerprinting, and (3) the registration of foreign agents, as government officers and employees of foreign governments. *Id.* sec. 7(a), 22 U.S.C. sec. 288d(a) (1988). Finally, alien employees of international organizations are

subject to special rules governing deportation. *Id.* sec. 8(b), 22 U.S.C. sec. 288e (1988).

Other privileges, exemptions, and immunities under the International Organizations Immunities Act apply to all employees of an international organization, whether they are aliens or American citizens. For example, all employees of international organizations are granted immunity from suit and legal process for acts performed in their official capacity. *Id.* sec. 7(b), 22 U.S.C. sec. 288d(b) (1988). Similarly, the wages of all employees are exempt from FICA taxes, FUTA taxes, and income tax withholding. *Id.* sec. 4(c), (d), and (e) (current version at Code secs. 3121(b)(15), 3306(c)(16), 3401(a)(5)). Finally, the services performed by all employees of an international organization are excluded from the definition of the term "employment" under the Social Security Act. *Id.* sec. 5(a), 42 U.S.C. sec. 409(b) (1988).

If section 247(b) of the Immigration and Nationality Act were interpreted to mean that every alien employee of an international organization waived all of the rights, privileges, immunities, and exemptions provided to him under the International Organizations Immunities Act by filing a waiver, then anomalous and illogical results would be created. For example, if the waiver were so interpreted, then every alien who filed a waiver would become subject to FICA taxes, FUTA taxes, and income tax withholding, whereas U.S. citizens and other alien employees of international organizations would remain free of those taxes.

Congress did not enumerate in the Immigration and Nationality Act the specific rights, privileges, exemptions, and immunities which it intended to be waived under section 247 of the Act. Therefore, it is appropriate to review the legislative history of the Immigration and Nationality Act for guidelines. See e.g., *Toibb v. Radloff,* 501 U.S. _____, 111 S. Ct. 2197, 2200 (1991), where the Supreme Court stated that "a court appropriately may refer to a statute's legislative history to resolve statutory ambiguity".

The legislative history of section 247(b) of the Immigration and Nationality Act discloses that Congress perceived it to be undesirable for aliens who are permanent residents to exercise any privileges, exemptions, and immunities "which are inconsistent with an assumption of the responsibilities of citizenship". H. Rept. 1365, 82d Cong., 2d Sess. 64 (1952). This

is because permanent residents are accorded the privilege of residing permanently in the United States as immigrants and of becoming eligible for naturalization. 8 U.S.C. sec. 1101(a)(20) (1988). The reports of both the House and Senate committees which considered section 247 of the Immigration and Nationality Act state as follows:

In section 247, the Attorney General is required to adjust the status of immigrants who, subsequent to entry, acquire an occupational status which would entitle them to a non-immigrant status * * *. This is intended to cover the situation where aliens who have entered as immigrants obtain employment with foreign diplomatic missions or international organizations or carry on the activities of treaty traders. Normally, they would be classified as nonimmigrants and because of the nature of their occupation, would be entitled to certain privileges, immunities, and exemptions. The committee feels that it is undesirable to have such aliens continue in the status of lawful permanent residents and thereby become eligible for citizenship, when, because of their occupational status they are entitled to certain *privileges, immunities, and exemptions which are inconsistent with an assumption of the responsibilities of citizenship under our laws.* Such an adjustment shall not be required if the alien executes an effective waiver of all rights, privileges, exemptions, and immunities under any law or any Executive order which would otherwise accrue to him because of his occupational status. [H. Rept. 1365, 82d Cong., 2d Sess. 63-64 (1952); S. Rept. 1137, 82d Cong., 2d Sess. 26 (1952); emphasis supplied.]

We conclude from the above that Congress intended the waiver to apply only to those rights and privileges which are not available to American citizens. Otherwise, if the right, privilege, exemption, or immunity is available to American citizens, then it is hard to see how it could be one which is "inconsistent with an assumption of the responsibilities of citizenship". *Id.*

The same conclusion was reached by the Attorney General who, as mentioned above, is charged with administration of the Immigration and Nationality Act. The Attorney General's analysis of the scope of a waiver under section 247(b) of the Immigration and Nationality Act is set forth in an opinion rendered to the Secretary of State on May 1, 1953, less than 1 year after passage of the Immigration and Nationality Act. 41 Op. Atty. Gen. 131 (1953). Representatives of the Secretary of State had asked for advice on the effect of the waiver in the case of immigrant alien employees of inter-

national organizations. The opinion describes the chief concern of the State Department as follows:

the chief concern, in the case of international organizations like the United Nations, is the effect of such waivers on the immunity of officials of the organization from legal process relating to acts performed by them in their official capacity, and the immunity of employees from income taxation on salaries paid by the organization. [41 Op. Atty. Gen. at 134.]

The Attorney General reviewed the legislative history of section 247 of the Immigration and Nationality Act and concluded as follows:

it is clear that the Congress intended to deprive immigrant aliens employed in the international organizations and foreign missions of the privileges and exemptions resulting from the occupational status *which would not be equally available to American citizens similarly situated*. Conversely, it was not the intention of the Congress to require immigrants in these occupations to surrender privileges which American citizens similarly employed may assert. Obviously, if American citizens may lawfully exercise such privileges, the privileges would not appear to be inconsistent with the responsibilities of citizenship.

The Congress might have discriminated entirely against immigrants in favor of citizens, but it did not do so. On the contrary, it sought, by the election offered under section 247, to place immigrants and citizens in the specified categories of employment on an equal footing by denying to immigrants special privileges, exemptions, and immunities not available to citizens similarly employed.

[41 Op. Atty. Gen. at 136; emphasis supplied.]

Based upon the above analysis, the Attorney General concluded that the tax exemption provided under the predecessor of section 893 is waived when an employee of an international organization files a waiver under section 247(b) of the Immigration and Nationality Act. That conclusion is premised on the fact that, as a general rule, American citizens who are employees of international organizations are not eligible to enjoy the exemption from Federal income tax on their wages and salaries from the organization provided by section 893. Cf. *Singer v. United States,* 83 F.2d 358 (7th Cir. 1936). We agree with the Attorney General's analysis on this point, as far as it goes, but we note that the opinion does not deal with a citizen of the Philippines.

The Attorney General also concluded that immunity from suit and legal process under section 7(b) of the International Organizations Immunities Act is not waived under section

247(b) of the Immigration and Nationality Act. 41 Op. Atty. Gen. at 137. That conclusion is premised on the fact that immunity from suit and legal process is offered to both citizen and noncitizen employees of international organizations for acts performed by them in their official capacity.

With the above background, we are now in a position to address the remaining two arguments made by petitioners. First, they argue that Congress did not intend an alien employee of an international organization to lose eligibility for the tax benefits under section 893 by filing a waiver for the purpose of becoming a permanent resident of the United States. Petitioners point to the fact that, under section 893, a citizen of the Republic of the Philippines, such as Ms. Ying, is entitled to the exemption even if she becomes a citizen of the United States. They note that the benefits of citizenship are even greater than the benefits of resident alien status. Consequently, they argue, obtaining "the lesser benefits of resident alien status could not have been intended to be a sacrifice of the benefits of section 893 if one is otherwise eligible for those tax benefits."

Based on the above argument, petitioners draw two conclusions. First, they conclude that Congress did not intend the filing of a waiver to cause the loss of eligibility under section 893, and the regulations incorrectly link section 893 to the waiver under the Immigration and Nationality Act. It follows from this conclusion that both petitioners are eligible for the exemption under section 893. Second, they conclude that Congress did not intend a citizen of the Republic of the Philippines, like Ms. Ying, to lose the benefits of section 893 by filing a waiver under section 247(b) of the Immigration and Nationality Act. It follows from this conclusion that Ms. Ying is eligible for the exemption under section 893. We disagree with the first conclusion and agree with the second.

Our analysis begins with section 893. By its terms, it applies to an employee of an international organization only if "such employee is not a citizen of the United States, or is a citizen of the Republic of the Philippines (whether or not a citizen of the United States)". Sec. 893(a)(1); sec. 1.893-1(b)(5), Income Tax Regs. Accordingly, a U.S. citizen who is an employee of an international organization is not eligible for the benefits of section 893, unless the employee is a citizen of the Republic of the Philippines.

The predecessor of section 893(a)(1), which applies the exemption to citizens of the Philippines, was enacted in the Revenue Act of 1942, ch. 619, tit. I, sec. 149, 56 Stat. 842, 26 U.S.C. sec. 116(h) (Supp. II 1942). At that time, under the laws of the Commonwealth of the Philippines, officers and employees of the United States on duty in the Philippine Islands were exempt from tax on compensation paid by the Government of the United States. S. Rept. 1631, 77th Cong., 2d Sess. 116-117 (1942); H. Rept. 2333, 77th Cong., 2d Sess. 94 (1942). Congress intended to reciprocate by exempting from U.S. income tax the compensation paid by the Commonwealth of the Philippines to its officers or employees for services rendered in the United States. The exemption was broadly formulated to apply to all citizens of the Philippine Islands, even those who are also citizens of the United States. S. Rept. 1631, *supra* at 117; H. Rept. 2333, *supra* at 94.

Thus, section 893 declares that a U.S. citizen who is an employee of an international organization is not eligible for the benefits of section 893, unless the employee is a citizen of the Republic of the Philippines. See also sec. 1.893-1(b)(5), Income Tax Regs. Stated differently, the statute declares that a citizen of the United States is eligible for section 893, as long as he is a citizen of the Republic of the Philippines. In effect, in the case of an individual who is a citizen of the Republic of the Philippines, section 893 itself declares that the exemption is not "inconsistent with an assumption of the responsibilities of citizenship". H. Rept. 1365, 82d Cong., 2d Sess. 63-64 (1952); S. Rept. 1137, 82d Cong., 2d Sess. 26 (1952). This is true because section 893 permits an American citizen, similarly situated, to enjoy the benefits of section 893. See 41 Op. Atty. Gen. 131 (1953). Therefore, in our view, a citizen of the Republic of the Philippines who files a waiver under section 247(b) of the Immigration and Nationality Act does not, thereby, become ineligible for the benefits under section 893.

As applied in this case, we agree with respondent that Mr. Ying became ineligible for the benefits under section 893 when he filed his waiver under section 247(b) of the Immigration and Nationality Act in 1974. However, for the reasons discussed above, we disagree with respondent that Mrs. Ying, a citizen of the Republic of the Philippines,

became ineligible for the benefits under section 893 when she filed her waiver under section 247(b) of the Immigration and Nationality Act in 1972. To the extent that subparagraphs 1.893-1(b)(1) and (4), Income Tax Regs., require a different result, they do not harmonize with section 247(b) of the Immigration and Nationality Act or with its origin and purpose, and are invalid. See *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 25-26 (1982); *Pepcol Manufacturing Co. v. Commissioner*, 98 T.C. 127, 137 (1992).

Petitioners' final argument is that section 893 provides a double benefit, both an "exclusion from income and an exemption from tax". They contend that, according to the terms of section 1.893-1(b)(4), Income Tax Regs., a waiver under section 247(b) of the Immigration and Nationality Act waives the exemption but not the exclusion. Thus, they contend, their wages from the United Nations and UNICEF may not be exempt from tax but such amounts are nevertheless "not included in gross income". We disagree.

Petitioners' argument fails to recognize that section 247(b) of the Immigration and Nationality Act provides, in effect, that an alien employee of an international organization must waive the benefits of section 893 in order to retain immigrant status. The short answer to petitioners' argument is that a waiver under section 247(b) of the Immigration and Nationality Act waives whatever benefits "would otherwise accrue to" an alien employee of an international organization because of that occupational status. Immigration and Nationality Act, sec. 247(b), 8 U.S.C. sec. 1257(b) (1988). If section 893 provides two benefits, then both are waived. Otherwise, the waiver would have no effect on section 893, contrary to our view, discussed above, that Congress intended the opposite to be the case.

Furthermore, we note that section 893 applies to the "Wages, fees, or salary of any employee of * * * an international organization". It does not confer tax-exempt status on employees of international organizations. An alien who is entitled to the exemption under section 893 remains subject to U.S. tax on income from other sources. See *Van Der Elst v. Commissioner*, 223 F.2d 771 (2d Cir. 1955), affg. a Memorandum Opinion of this Court dated Nov. 16, 1953; sec. 1.893-1(a)(3), Income Tax Regs.

In this context, the phrase "exempt from taxation" is interchangeable with the phrase "not be included in gross income". For example, section 103 provides that "gross income does not include interest on any State or local bond." Such interest is referred to as "tax-exempt interest" or "exempt from tax" in other sections of the Code. E.g., secs. 29(b)(3)(A)(i)(II), 57(a)(5).

The above conclusion is borne out by the legislative history of various "exclusions" from gross income which are contained in the Internal Revenue Code. Compare Internal Revenue Code of 1939, ch. 2, secs. 22(b) and 116, 53 Stat. 10, 48, with Internal Revenue Code of 1954, ch. 1, secs. 872(b), 883, 892, 893(a), 894, 911(a), 912, 933, and 943, 68A Stat. 280, 283, 284, 289, 290, 293, 294. Section 22(b) of the Internal Revenue Code of 1939 enumerated various items of income, including (1) amounts received under a life insurance contract paid by reason of death of the insured; (2) amounts received under a life insurance, endowment or annuity contract; (3) gifts, bequests, and devises; (4) tax-free interest; and (5) compensation for injuries or sickness. It provided that each of those items of income:

shall not be included in gross income and shall be exempt from taxation under this chapter * * *

Similarly, section 116 of the Internal Revenue Code of 1939 enumerated other items, including (1) earned income from sources without the United States; (2) income of foreign governments'; (3) income of States and municipalities; and (4) the wages paid to employees of foreign governments (the predecessor of section 893). Section 116 of the Internal Revenue Code of 1939 also provided that each of those items of income:

shall not be included in gross income and shall be exempt from taxation under this chapter * * *

When the Internal Revenue Code of 1954 was enacted, the items of income which had been a part of section 22(b) of the Internal Revenue Code of 1939 were broken into individual sections. Each of those sections used the phrase "gross income does not include" as its operative statement. None of those sections contained the words "exempt from taxation", as was the case in section 22(b) of the Internal Revenue Code

of 1939. For example, section 22(b)(1) and (2) of the Internal Revenue Code of 1939 became section 101 of the Internal Revenue Code of 1954 which provides: "gross income does not include amounts received * * * under a life insurance contract". Internal Revenue Code of 1954, ch. 1, sec. 101, 68A Stat. 26. Section 22(b)(3) of the Internal Revenue Code of 1939 became section 102 of the Internal Revenue Code of 1954, 68A Stat. 28, which provides: "Gross income does not include the value of property acquired by gift, bequest, devise or inheritance." Section 22(b)(4) of the Internal Revenue Code of 1939 became section 103 of the Internal Revenue Code of 1954, 68A Stat. 29, which provides: "Gross income does not include interest on—(1) the obligations of a state * * * or any political subdivision". Section 22(b)(5) of the Internal Revenue Code of 1939 became section 104 of the Internal Revenue Code of 1954. Despite the fact that the words "exempt from taxation" had been dropped from these provisions, the committee reports which accompanied the Tax Reform Act of 1954 state that "no substantive change is made." H. Rept. 1337, 83d Cong., 2d Sess. A32 (1954); S. Rept. 1622, 83d Cong., 2d Sess. 183 (1954).

The items of income which had been enumerated in section 116 of the Internal Revenue Code of 1939 also became the subject of separate sections of the Internal Revenue Code of 1954. However, each of those sections continued to use the language "shall not be included in gross income and shall be exempt from taxation". See e.g., Internal Revenue Code of 1954, secs. 892, 893, 911, 912. However, there is nothing to suggest that Congress intended the latter provisions to operate differently than the former.

## Respondent's Cross-Motion for Partial Summary Judgment

In respondent's cross-motion for partial summary judgment, respondent argues that the wages and salaries received by both petitioners are includable in gross income and subject to U.S. income taxation "pursuant to the Convention on the Privileges and Immunities of the United Nations." Alternatively, respondent argues that the income received by both petitioners from the United Nations "is includible in gross income and is subject to United States

taxation" because both of them filed a waiver under section 247(b) of the Immigration and Nationality Act.

In effect, respondent argues that both petitioners are subject to U.S. tax on their wages from the United Nations and UNICEF because neither of them qualifies under section 18(b) of the Convention on the Privileges and Immunities of the United Nations to "be exempt from taxation on the salaries and emoluments paid to them by the United Nations". Convention on the Privileges and Immunities of the United Nations, Feb. 13, 1946, 21 U.S.T. 1418, 1432. Alternatively, respondent argues that both petitioners are subject to U.S. tax on their wages from the United Nations and UNICEF because neither of them qualifies for the exemptions under section 893.

We find nothing in the U.N. Convention which states that an "official of the United Nations" is subject to U.S. income tax if he or she does not qualify for exemption under the convention. Rather, the U.N. Convention is formulated in terms of an exemption from taxation. If a taxpayer does not qualify for the exemption provided by the U.N. Convention, as respondent contends, that fact does not mean that the taxpayer becomes automatically subject to U.S. tax on wages paid by the United Nations. The taxpayer may be eligible to avoid U.S. tax on such amounts by application of the Internal Revenue Code or other treaties.

In this case, petitioners do not claim to be covered by section 18(b) of the U.N. Convention. Therefore, we fail to see any reason to consider whether either or both of them are eligible for the exemption provided by section 18(b) of the U.N. Convention. Even if we were to agree with respondent that neither petitioner is eligible for that exemption, it would not establish that their wages from the United Nations and UNICEF are subject to U.S. tax.

The situation is similar in the case of respondent's alternative argument that petitioners are subject to U.S. tax because they do not qualify under section 893. Section 893 is formulated as an exemption from tax and failure to qualify under the exemption does not mean that the taxpayer is subject to tax. For example, in Mr. Ying's case, we agree with respondent that Mr. Ying is not eligible under section 893 to exclude his wages from gross income. However, our opinion on that point does not establish that Mr. Ying is subject to

U.S. tax on his wages from UNICEF. We note that Mr. Ying claims to be eligible under section 911 to exclude his wages from income. That issue is not foreclosed by the fact that we agree with respondent that section 893 does not apply in his case.

A decision on a motion for summary judgment may be rendered if it is shown that "there is no genuine issue as to any material fact and * * * a decision may be rendered as a matter of law." Rule 121(b), Tax Court Rules of Practice and Procedure. The moving party bears the burden of proving that no genuine issue exists as to any material fact. *Naftel v. Commissioner*, 85 T.C. 527, 529 (1985); *Marshall v. Commissioner*, 85 T.C. 267, 271 (1985). Respondent has not satisfied that burden and therefore is not entitled to judgment as a matter of law.

To reflect the foregoing,

> *An order will be issued granting petitioners' motion in part and denying petitioners' motion in part, and denying respondent's motion.*

Reviewed by the Court.

HAMBLEN, CHABOT, PARKER, CLAPP, JACOBS, GERBER, WRIGHT, PARR, WELLS, COLVIN, HALPERN, and BEGHE, *JJ.*, agree with this opinion.

SWIFT, *J.*, did not participate in the consideration of this opinion.